We call the next case, Country Credit v. Martin. We'll hear first from Mr. Howell. May it please the Court, John Howell on behalf of Country Credit, L.L.C. From the debtor's initial phone call to Country Credit up until he signed the loan documents and received the loan funds, he made materially false statements with the intent to deceive Country Credit. Under Section 523.A.2.B., the debt is not dischargeable. The Bankruptcy Court and District Court's judgments to the contrary should be reversed. First, with respect to the child support statements the debtor made, the Bankruptcy Court erred as a matter of law in concluding that the loan documents were ambiguous in asking the debtor to disclose his child support obligations. The debtor's child support obligations were expressly asked twice. First, he was asked if he had any family financial issues such as child support, and he said no. Then he was asked if he had listed all of his debt, which was defined as including but not limited to child support, and he said that he had so disclosed. And he admitted, didn't he, that a reasonable lender might want to know he owed $800 a month in child support? Your Honor, he did make that representation twice. And he did admit at trial that a reasonable lender . . . But he did list child support obligations of over $800 a month, did he not? He did list child obligations, support obligations of over $800 per month. He did not disclose that to Country Credit, Your Honor. Was that listed on the forms that he filed in the Bankruptcy Court? In the forms filed with the Bankruptcy Court, I believe he did disclose his child support. Yeah, but not on the loan documentation. That's correct, Your Honor. In none of the application forms did the debtor disclose his child support. He was also twice asked to list payments that had not been disclosed elsewhere in the loan application documents. Under the other monthly payments and other line items, although he listed a couple of things, he did not list his $840 monthly child support payment. Now, the Bankruptcy Court nor the District Court addressed either of those provisions, nor did they address the two occasions on which the debtor was asked if there was any other information a lender would want to know about. So there was no ambiguity in the loan documents with respect to the child support obligations. And based on the erroneous conclusion that there was ambiguity in the loan documents, the Bankruptcy Court erred in concluding that the debtor lacked intent to deceive. As already mentioned, in response to the six— It erred in doing what about? It erred in concluding that the debtor lacked intent to deceive Country Credit in making those statements. But you're not arguing that it was inappropriate to consider intent. That's not your argument. No, Your Honor. That intent to deceive is one of the elements of a 523A2B claim. And that's a fact-intensive determination. Wouldn't you agree? It certainly is fact-intensive, Your Honor. However, as mentioned, to the extent as it was informed by the Bankruptcy Court's legal conclusions that there was ambiguity in the loan documents, there's a component that is subject to de novo review, and perhaps at best it's a mixed-fact question. But even under a purely erroneous standard— What was the specific ambiguity you're referring to that the Bankruptcy Court referred to? Your Honor, the Bankruptcy Court said that—found that family financial issues, he said that that was qualified in some fashion. But actually what it said, it did not say family financial issues with child support. It said family financial issues such as child support. So the term was defined as including child support. Same thing with respect to the question if he had listed all of his debt. Debt was listed to include child support. He thought it wasn't an issue in the colloquial sense in which we all refer to issues nowadays. Yes, Your Honor. I think in the sense of problems or difficulties. But even under that subjective understanding, he was in arrears at the time by I believe over $15,000 in child support payments, which surely— But there was a garnishment or a wage withholding order on his paycheck, isn't that right? I believe there was, Your Honor. And so the money was coming out of his paycheck. For whatever his obligations were, they were taking an amount out of his paycheck. Yes, Your Honor. And in that connection, what happened is Countrywide asked him to provide his most recent paystub, isn't that right? As evidence that he was employed. That is correct. And he did that. He did provide that paystub. That just happened to be one where they didn't have a wage withholding order or a levy against that particular paycheck, isn't that right? That was not included in that check. He called it a free check because it did not include that. But nothing prevented Countrywide from saying give me your last three paystubs. That's correct, Your Honor. But we're relying on the check stub amongst a host of the written representations that I mentioned previously that he made. So the check stub is viewed in the context of the totality of the circumstance. Isn't it true in Chapter 13? I mean, the reason Countrywide, aside from being a diligent creditor, wanted to know about this is that I believe it's also true in Chapter 13, is it not, that child support obligations are paid out of a bankruptcy estate in priority to everything including attorney's fees? That's my understanding, Your Honor. The bankruptcy court correctly concluded that although these statements the debtor made were materially false, that he lacked intent to deceive in making them. Intent to deceive is inferred from the debtor's reckless disregard for the truth or falsity of these statements. In light of the numerous and plain requests for the debtor's child support information and his like number of false responses in combination with the sheer magnitude of his child support payments, the $840 a month, that was one-third of his net monthly income. On that basis, we believe that the bankruptcy court erred in finding the debtor had no intent to deceive. In connection with that, Counsel, the bankruptcy court conducted a hearing. He did, Your Honor. And heard testimony from Mr. Martin. He did. And had the ability to judge his demeanor, listen to his responses, and make determinations about the credibility of his testimony. Isn't that right? He did, indeed. All in connection with his intent. Certainly, Your Honor. But as I mentioned, there were, in addition to the debtor's testimony, there was testimony from country credit. Also, loan documents which the debtor signed which speak for themselves. And as I mentioned, twice child support was expressly asked for. And four other occasions it was asked for in other ways. And the debtor indicated he understood what the other monthly payments and other line items meant because he answered them. But he didn't list his child support. The bankruptcy court nor the district court addressed any of those four provisions. He also falsely stated that his net disposal income after monthly expenses was $654 when, in fact, it was negative, given his child support obligations. And he also said he was not delinquent on any bill when, in fact, as I mentioned, he was $15,000 in arrears on child support payment. And then the bankruptcy court mentioned that preapproval of the loan somehow negated intent to deceive. There is zero evidence that the debtor thought that signing the loan documents was nothing more than a formality, as the bankruptcy court concluded. Neither the bankruptcy court nor the district court nor the debtor cite any portion of the record that would support that conclusion. Has Judge Olek ever found that in any other case? Your Honor, I'm unaware. I mean, I can't believe that that's a fact-specific determination, that you're approved for a loan by a phone conversation and the underlying documentation has nothing to do with it. And, Your Honor, I do not know the answer to the question. But to the contrary, all the evidence in the record indicated that Country Credit, in fact, would not have made the loan had the debtor not come in to sign the note and the other loan documents. And it said it would not have made the loan had the debtor admitted that he had such child support responsibilities. What's your closest case where we reversed a finding of no intent by the bankruptcy court? Your Honor, there may well be one. I am not aware of one in a reversal. I do know some of the affirmances in Ray Morrison, as we cite in our brief. But I assume that there probably would be some, but I'm not aware of them. Alternatively, the bankruptcy court erred as a marabout interpreting the word dependence from the loan documents. Now, in the alternative, Country Credit asserted that the debt is nondischargeable based on the debtor's statement that he did not have any dependence. But the bankruptcy court concluded that statement was not even false. Although it was bound to apply in Mississippi law, the bankruptcy court accorded the word dependence, the technical legal definition, from the IRS code. Rather than Mississippi Supreme Court's ordinary objective meaning as a person who relies on another for support from the Deemer-Lumber case. And under that ordinary meaning, the debtor's statement he had no dependence was false. Because, in fact, he had five children who were counting on him receiving child support. And it was materially so because Country Credit testified that it would not have made the loan had it known about that number of dependents. Did he declare that he had five children? No, Your Honor. In the loan documents, he indicated he had zero dependents. There was no mention of children at all. Where's the difference between five and six? Did one of them age out? Your Honor, I'm not certain of that. Something in the briefs referred to six. He did have six children. I'm not sure if he aged out or he may have been supporting them but not under a child support order. We can believe that he didn't know what the legal definition of dependent was, though, can't we? Well, Your Honor, on that issue, the bankruptcy court did not reach on the dependent separate basis for holding the debt non-dischargeable. The bankruptcy court did not address intent to deceive element. It only addressed the material falsity element, which is not subjective and is determined by ordinary contract interpretation principles here in Mississippi law. Unless the court has further questions at this time, the judgment of the bankruptcy court and district court should be reversed and the debt held not dischargeable. Thank you, Mr. Powell. And we're here for Ms. Eubanks. May it please the Court. Good afternoon. My name is Anitra Eubanks, and I, along with my co-counsel, Terrace Harris, represents the appellate, Mr. Bobby Martin, in this matter. Your Honors, what we have here is a man that filed a 100% Chapter 13 bankruptcy plan. And as you know, in the bankruptcy world, that's as good as it's going to get because this man is paying back his debt. So we're really not here fighting over the repayment of this $1,800 loan. What we're actually fighting over is the repayment of this 43.33% interest rate attached to the loan. Here, a trial was held on the matter. The judge saw the demeanor of the witnesses. The judge weighed the evidence. Are you saying that his 100% plan includes the $1,800 for the heating system but not the interest? Is that what you're saying? Yes, ma'am. That's what I'm saying. I see. Well, that's not exactly 100%, but the fact that he's offering to pay something is more than many of them. Right, Your Honor. And if we look at the—we have to weigh that against the interest of the bankruptcy code, the intent of the bankruptcy code. And the intent of the bankruptcy code is to provide a fresh start to honest but unfortunate debtors. So we do have to weigh that against the intent of the code. So here, a trial was held on the matter. Judge Olak heard the evidence. So he was able to judge the credibility of the witnesses. First, we'll look at dependents. Country Credit is arguing that Mr. Martin failed to disclose that he had any dependents. Now, Mr. Martin testified that he thought that the term dependent was the term used for tax purposes. And this is consistent with his tax returns. His tax returns prior to obtaining this loan shows that he has zero dependents. He lists zero dependents on his tax returns. His tax returns after filing bankruptcy also list zero dependents. So this evidence is consistent to what he testified to. Also, Judge Olak found—and there was some questions brought up on the bankruptcy schedules that he did list that he had five or six dependents. Judge Olak found that for bankruptcy purposes, the term dependent is construed a lot more liberally than it is for tax purposes. In the case of Acosta's, Your Honors, testimony— If I could be construed like it is in bankruptcy, probably, I could claim more dependents. That's all I'm saying. But go ahead. That's not a question. Okay. In the case of Acosta, the Court has held that an honest belief, regardless of how unreasonable it may seem, does not rise to the level of intent to deceive. So in this situation, regardless of how unreasonable Mr. Martin's belief is, if the Court finds that it was honest, it does not rise to the level of intent to deceive. Next, we'll look at the domestic support and child support issue. Mr. Martin testified that on the loan application, the question was asked, Do you have any family financial issues, such as child support? He testified that he did not view his child support as an issue. His child support was being payroll deducted from his check. So in his mind, he did not think that it affected his bottom line. Also, the question was asked, Do you have any debt, such as child support? Again, Mr. Martin testified that he did not view his child support as a debt. Well, let me ask you this, though. Number one, why did it just so happen that when he did the pro forma budget for the lender, under other expenses, he included $50 for his cell phone, but not $800 or so deducted each month from his paycheck? What kind of oversight explains that? Your Honor, it wasn't in the record, but I can speculate that the cell phone payment, he was personally paying that every month. But he was not personally paying this child support every month because it was being deducted via his payroll. Okay. And again— But wasn't there a judgment for back child support, was there not? There was a judgment for back child support. Now, the record does not really delve into that, but the judge found that he was not paying towards that back child support. But I'm sure Judge Grace can attest to this. In Mississippi, when you have a child support order and there are arrears attached, typically you pay the arrears, the back child support, along with the ongoing child support. But again, the record does not specifically explain that. Can I take an oath before I testify? No. All right. Okay. So, again, with the issue of this domestic support, whether or not he listed, the court has found that as long as it is an honest belief, regardless of how unreasonable it may sound to us sitting in this room, then it still does not rise to the level of intent to deceive. But you do get to the point where it is so unreasonable you question whether it is an honest belief, can't you? Your Honor, I agree. But, again, the court has found that, as unreasonable as it may sound, as long as it was honest. And the record seems to indicate that this man honestly believed that the term dependent was the term used for tax purposes. So, next, I'll address the free check. Now, Mr. Martin, pretty much, Mr. Martin complied with what he was asked. Mr. Martin was asked to provide his most recent check stub. He did that. He gave them his most recent check stub. Now, that check stub happened to be a free check or a check that did not show his deduction, but it was his most recent check stub, and he complied. And the judge even noted in his opinion that the country credit representatives, they are a finance company. They are an established finance company. So I am sure that they've had circumstances where they've dealt with free checks, and there was nothing to stop them from asking for an additional check. The timing of the loan issue. Now, as far as the timing of the loan, Your Honor, Mr. Martin testified that he thought he had been approved for this loan. The country credit representative even testified herself that she told him he had been approved. The bankruptcy court found that it was reasonable for Mr. Martin to believe that he had been approved for this loan, and the only thing he had to do when he went into the store the next day was to sign off on the loan. So the judge found that, you know, pretty much his signature was just a mere formality. I mean, that's the thing. You know, we don't reverse findings. We reverse a judgment. But I just cannot believe that a bankruptcy judge says that approval by phone of a loan of any sort at all is verbal, substitutes for signing the documents that constitute the actual writing of the loan. Yes, Your Honor. And Judge Olak did not find that it substituted the writing of the loan. When Judge Olak found that, the country credit representative testified that she told Mr. Martin his loan had been approved, not preapproved. I understand that, but you still have to sign a promissory note. Even if she had given him the money when he walked in, it wouldn't be enforceable at all under the statute of frauds unless he signed a promissory note. And you're right, Your Honor. But the case law says that where there is a question of close call, where the question is close, the courts have determined that the debt to be dischargeable. And this is in Frazier, the Frazier case. Now, as far as the ordinary meaning of the contract, country credit is saying that the judge should have applied the ordinary meaning. When you look at the record in its entirety, Your Honors, there are like five or six different definitions of dependent floating out there. You have one definition that the bankruptcy court ascribed. Country credit gave dependent its own definition. Mr. Martin believed the term dependent to have one meaning. And even Judge Reeves in the district court used the dictionary and there was two different definitions there. And Judge Davis, in your case of Henry Denver Merchandise Mart, you said that we are to look at the applicable state law. So if we look at the applicable state law in this case, in the case of Dalton versus Cellular South, it tells us that once a contract is found to be ambiguous, then it is construed against a drafter. Here, country credit created this contract. So the ambiguity, if any, should be construed against them. But assume an arguendo that Judge Olak aired on this particular point. You still have to go back to the intent element. Country credit has not proven intent. They didn't do it then. They can't do it now. So they just cannot win on that issue. So we ask that this court affirm Judge Olak's ruling and also we ask that the court affirm the district court's ruling. Thank you very much. Thank you. All right. Mr. Harris. You know, I would like to pick right up with where Ms. Eubank left off, dealing with the interpretation of the contract in which she referenced the case in which you are the judge stated. Now, even if before you get to an interpretation of a contract, you must first determine that a contract was, in fact, enforceable. Here, all of the ambiguities in the contract, actually not in the contract itself, is in the loan application document. It's in the fraud notice. And from my review of the contract itself, the security agreement and the promissory note, there was no provision in the actual contract that incorporated the loan application and the fraud notice. So if there is any ambiguities there, even though assume that they are, they should be construed against the drafter. But they were not a part of it. So Judge Olak could not have erred by interpreting a word within the contract because there was no contract. And to address a point that Judge Jones asked about Judge Olak finding in other cases, here, Your Honor, the important part of Mr. Martin thinking that his loan had been pre-approved goes directly to his intent, not the fact that it had, in fact, been pre-approved. If he had the intent to deceive them or to fraud them, if he thought that when he went in to sign his documents, he had to tell them a certain thing, that would be one thing. But when he went in, he thought signing of the documents were a mere formality because it had, in fact, been approved. Now, what we're really arguing here today, Your Honor, are factual issues. He didn't just sign the document, did he? Didn't he answer specific questions? Well, no, Your Honor. The loan documents, the budget, all of those things. Oh, the application, though. That was taken over the telephone. But he signed that when he went in and he signed the loan documents. Now, again, we're arguing over factual issues here today. And as this Court is aware, this Court should give great deference to the bankruptcy judge who actually said as to find their fact in this matter. And in a previous case, in an enraged matter of Norris, a Fifth Circuit case, it says, and I quote, if the bankruptcy judge finds one version of events more credible than other versions, this Court is in no position to dispute the findings. And that's what we have here today. Judge Olak heard the evidence. He looked at the demeanor of the witnesses, and he reviewed the documentary evidence put forth before the Court. And he found one version of the facts more credible than the other. He found that Bobby Marr's version of the fact was more credible. Therefore, without a firm conviction that a mistake has been made, this Court should not reverse those findings. Now, we're here on a clear, erroneous standard. And as Judge Graves wrote in the Black versus City Poll case, where in that case, Judge Graves reversed and found that clear error had been made. The difference between that case and our case before the Court today is that in the Black case, there were no facts in the record to support the lower court's findings. Additionally, the district court judge in that case made an implicit finding of fact that wasn't supported by the record. What do we know here today, factually? We know that as it relates to the child support issue, as Ms. Eubanks pointed out, Mr. Marr testified that he thought that he didn't have to disclose the child support because he didn't review it as a debt. Because it was automatically coming out of his check. Judge Olak heard that testimony and he gave credibility to that testimony. As to the preapproval issue, Judge Olak found that he thought the loan, that Mr. Marr honestly believed that the loan had been preapproved because Ms. King, the country credit representative, informed him that it had been done so. That's in the record. As it relates to the free check, that's the issue whether there's gross pay versus net pay. The bankruptcy court heard the testimony. In fact, at one point in the trial court, there was some dialogue amongst the parties and the judge as it relates to gross and net. If the court would take a look at the budget, a country credit representative actually scratched through maybe $3,600 that was on the budget sheet and wrote out to the side what the net was. So Mr. Martin did not have an intent to deceive them when he told them how much he made. Because obviously, we have to speculate because it's not in the record, but obviously they had a conversation about gross and net. Well, I don't mean to be too difficult with you, but the fact is if he had told them he had $800 plus deducted from each of his paychecks ordinarily, he'd have had a negative amount each month, which surely would have been material to country credit. Well, Your Honor, yet again, it is material. But the question is whether or not he had an intent to deceive. When he went in, he complied with what they asked him. They asked him for his most recent check stub, and that's what he gave them. But he owed more than he took in every month, arguably. Arguably, he did, Your Honor. Yet he did not have the intent to deceive at that time, and the bankruptcy judge once again sat there and waived the testimony of all the people involved, Your Honor. And the opposing counsel started, and he wanted to make the leap between the legal analysis saying that Judge Olak erred by finding that there was an ambiguity before he went into the intent to deceive. I have yet to see any case law that says that the judge have to not do that. In other words, that he has to look at the contract, or look at a contract, and try to determine whether or not the ambiguity exists prior to him going to the element of intent to deceive, because that's not an element of 523A2B. Now, the court only has to look to see whether or not there was a statement, whether or not a material misrepresentation was made, whether or not they relied upon it, and more importantly, whether or not there was an intent to deceive. And the lower court, two lower courts, the bankruptcy court and Judge Reeves, sitting as an appellate court, reviewed the record as a whole and found that there was no intent to deceive. Again, Ms. Eubanks pointed out, and she basically outlined what the lower court heard, as well as what District Court Judge Carlton Reeves reviewed on all of these issues, and all of these issues are supported by the record itself. And that's where this court has to look to see whether or not there's sufficient evidence in the record itself to support Judge Olek's finding that there was no intent to deceive. And I am finished with my argument, and I will be happy to take any questions the Honors may have. Okay, thank you very much, Mr. Adams. Okay, Mr. Howell, back to you. Thank you. Just a couple of points in rebuttal. With respect to the case law that says an honest yet unreasonable belief vitiates intent to deceive, well, that's not conclusive, and it only goes so far. Now, perhaps one or two, if this was a case where there were one or two statements at issue, maybe it might make a difference. But here there are eight or nine statements made by the debtor in the loan documents, and it's unreasonable to think that with that many false statements that the debtor is merely being honest yet unreasonable. And there's also no explanation that has been offered by the debtor in his testimony or otherwise any belief that he had with respect to the other or other monthly payments line items or with respect to the representations he made as to what a reasonable lender would want to know before making the loan. Again, there's no evidence on that. He clearly understood those. He answered them. He answered the other monthly payments and other with amounts of bills he was paying that were not listed elsewhere. With respect to the payroll deduction, a payroll deduction is no less a payment. The conditionally improved, well, the debtor still had to bring the check stub in, which he did, which shows he didn't merely view it as a formality. And he also has had to sign the loan note and the security agreement. Dependent, the meaning of that is not set by country credit or the debtor. It's here set by Mississippi law. And with respect to the debtor filling out the loan documents himself, in the loan application addendum record 71, he did explain a couple of items in his own handwriting. And for all the documents, he read them, he signed them, and he attested that his statements therein were true. And with respect to the payroll deducted issue, there was no testimony from the debtor himself, keeping in mind that intent to deceive, so this is judged from the vantage point of the debtor. There's no testimony from the debtor that he thought the items were referring to other than payroll deducted items. The testimony came from country credit, but it's the debtor's intent and state of mind which is at issue. And although Judge Olak may not have been required to interpret contract documents, he, in fact, did engage in contract interpretation. He found ambiguity in them. To the extent those conclusions affected his findings with respect to intent to deceive, they are for this Court's review under the de novo standard. And in sum, if I can just leave the Court with three takeaways. At least six times in the loan documents, both explicitly and in other ways, the debtor was asked to but did not disclose his child support obligations. He had been paying child support for 17 years, and he was currently paying for five children who depended on him. Second, the base $840 monthly obligation was one-third of the debtor's net monthly income, and he was often paying more than that sum to reduce his $15,000 arrearage. Contrary to the bankruptcy court's conclusion, the debtor was making arrearage payments. The past two months, he had paid $1,184 and $961, which was in excess of his base $840 obligation. The excess went to reduce his arrearage. And last, the truism that bankruptcy is for the honest debtor, if dishonest debtors are to be held accountable for their false statements, on this record, intent to deceive must be inferred and the debt held non-dischargeable. Otherwise, it would be next to impossible to find intent to deceive absent a confession by the debtor. For these reasons, the judgment should be reversed. Okay. Thank you, Mr. Farrar. Thank you, counsel. We have your case.